UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

| | | |
|---|---|---|
| CORY COSTON, # 194241, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:17-cv-249 |
| | ) | |
| CORIZON, INC., et al., | ) | Honorable Paul L. Maloney |
| | ) | |
| Defendants. | ) | |
| | ) | |

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. This lawsuit arises out of conditions of plaintiff's confinement at the Lakeland Correctional Facility from January 2014 through November 2016. The defendants are divided into three groups: (1) Corizon, Inc., Keith Papendick, M.D., Erin Orlebeke, M.D., and Oliver Johnston, M.D. (collectively referred to as the Corizon defendants); (2) Registered Nurses Randy Lindstrom, Hope Peek, Rhonda Rider, and Betsy Roberts-Spreeman (collectively referred to as the MDOC defendants); and (3) John and Jane Doe defendants.

Plaintiff alleges that he suffers from a seizure disorder and that all defendants were deliberately indifferent to his serious medical needs in violation of his Eighth Amendment rights. He alleges that, in August 2016, Nurse Ryder retaliated against him in violation of his First Amendment rights by orchestrating his transfer from the

prison's special needs unit into the general population.[1]   Plaintiff seeks an award of damages.

The matter is now before the Court on the Corizon defendants' motion for partial summary judgment based on the affirmative defense of failure to exhaust administrative remedies, as required by 42 U.S.C. § 1997e(a) (ECF No. 41),[2] and their motion for summary judgment on the merits (ECF No. 45), and the MDOC defendants' motion for summary judgment on the merits (ECF No. 52).   Plaintiff opposes defendants' motions.   (ECF No. 55, 56, 62, 64).

For the reasons set forth herein, I recommend that all plaintiff's claims against John and Jane Doe defendants be dismissed without prejudice under Rule 4(m) of the Federal Rules of Civil Procedure for failure to achieve service.   I recommend that all plaintiff's claims for damages against the MDOC defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity.   I recommend that defendants' motions for summary judgment on the merits be granted and that judgment be entered in defendants' favor on all plaintiff's claims.   I recommend that the Corizon defendants' alternative motion for partial summary judgment based affirmative defense of failure to exhaust administrative remedies, as required by 42 U.S.C. § 1997e(a), be granted.

---

[1] All other claims have been dismissed.   (ECF No. 4, 5).
[2] The Corizon defendants excluded from their motion for partial summary judgment plaintiff's claim that, in January 2016, Dr. Johnston denied him a particular medication.   (ECF No. 41, PageID.299).

## Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016). The standard for determining whether summary judgment is appropriate is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398, 400 (6th Cir. 2016) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *France v. Lucas*, 836 F.3d 612, 624 (6th Cir. 2016).

When the party without the burden of proof seeks summary judgment, that party bears the initial burden of pointing out to the district court an absence of evidence to support the nonmoving party's case, but need not support its motion with affidavits or other materials "negating" the opponent's claim. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the movant shows that "there is an absence of evidence to support the nonmoving party's case," the nonmoving party has the burden of coming forward with evidence raising a triable issue of fact. *Celotex Corp.*

*v. Catrett*, 477 U.S. 317, 323 (1986).   To sustain this burden, the nonmoving party may not rest on the mere allegations of his pleadings.   *See Ellington v. City of E. Cleveland*, 689 F.3d 549, 552 (6th Cir. 2012); *see also Scadden v. Warner*, 677 F. App'x 996, 1001 (6th Cir. 2017).   The motion for summary judgment forces the nonmoving party to present evidence sufficient to create a genuine issue of fact for trial.   *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1990); *see Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 533 (6th Cir. 2012).   "A mere scintilla of evidence is insufficient; 'there must be evidence on which a jury could reasonably find for the [non-movant].'"   *Dominguez v. Correctional Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Anderson*, 477 U.S. at 252); *see Brown v. Battle Creek Police Dep't*, 844 F.3d 556, 565 (6th Cir. 2016).

## **Standards Applicable to Defendants' Affirmative Defense**

The Corizon defendants have asserted the affirmative defense of plaintiff's failure to exhaust administrative remedies.   A prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 "or any other Federal law" must exhaust available administrative remedies.   42 U.S.C. § 1997e(a); *see Jones v. Bock*, 549 U.S. 199, 220 (2007); *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731 (2001).   A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process.   *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 734. "This requirement is a strong one.   To further the purposes behind the PLRA,

exhaustion is required even if the prisoner subjectively believes the remedy is not available, even when the state cannot grant the particular relief requested, and even where the prisoner[ ] believes the procedure to be ineffectual or futile." *Napier v. Laurel County, Ky.,* 636 F.3d 218, 222 (6th Cir. 2011) (internal quotations and citations omitted).

In *Jones v. Bock*, the Supreme Court held that "exhaustion is an affirmative defense, and prisoners are not required to specifically plead or demonstrate exhaustion in their complaints." 549 U.S. at 216. The burden is on the defendant to show that plaintiff failed to properly exhaust his administrative remedies. The Supreme Court reiterated that "no unexhausted claim may be considered." 549 U.S. at 220.

In order to exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules established by state law. *Jones v. Bock*, 549 U.S. at 218-19. In *Woodford v. Ngo*, 548 U.S. 81 (2006), the Supreme Court held that the PLRA exhaustion requirement "requires proper exhaustion." 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules." *Id.* at 90; *see Scott v. Ambani*, 577 F.3d 642, 647 (6th Cir. 2009). Thus, when a prisoner's grievance is rejected by the prison as untimely because it was not filed within the prescribed period, the prisoner's claim is not "properly exhausted" for purposes of filing a section 1983 action in federal court. 548 U.S. at

-5-

90-93; *Siggers v. Campbell*, 652 F.3d 681, 692 (6th Cir. 2011); see 42 U.S.C. § 1997e(a).

MDOC Policy Directive 03.02.130 (effective July 9, 2007) sets forth the applicable grievance procedures.[3]   The Sixth Circuit has "clearly held that an inmate does not exhaust available administrative remedies when the inmate fails entirely to invoke the grievance procedure." *Napier*, 636 F.3d at 224.   An argument that it would have been futile to file a grievance does not suffice.   Assertions of futility do not excuse plaintiff from the exhaustion requirement.   *See Napier*, 636 F.3d at 224; *Hartsfield v. Vidor*, 199 F.3d 305, 309 (6th Cir. 1999) ("[A]n inmate cannot simply fail to file a grievance or abandon the process before completion and claim that he has exhausted his remedies or that it is futile for him to do so because his grievance is now time-barred under the regulations."); *see Booth v. Churner*, 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.").

## **Qualified Immunity**

The MDOC defendants argue that they are entitled to summary judgment on the basis of qualified immunity.   "Once [an] official[ ] raise[s] the qualified immunity defense, the plaintiff bears the burden to 'demonstrate that the official [is] not entitled to qualified immunity.' " *LeFever v. Ferguson*, 645 F. App'x 438, 442 (6th

---

[3] A copy of the policy directive is found in the record.   (ECF No. 41-2, PageID.346-52).

-6-

Cir. 2016) (quoting *Silberstein v. City of Dayton*, 440 F.3d 306, 311 (6th Cir. 2006));
*see Hermansen v. Thompson*, 678 F. App'x 321, 325 (6th Cir. 2017).

"A government official sued under section 1983 is entitled to qualified
immunity unless the official violated a statutory or constitutional right that was
clearly established at the time of the challenged conduct." *Carroll v. Carman*, 135
S. Ct. 348, 350 (2014); *see Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015).   The first
prong of qualified immunity analysis is whether the plaintiff has alleged facts
showing that each defendant's conduct violated a constitutional or statutory right.
*See Saucier v. Katz*, 533 U.S. 194, 201 (2001).   The second prong is whether the right
was "clearly established" at the time of the defendant's alleged misconduct.   *Id.*
Trial courts are permitted to exercise their sound discretion in deciding which of the
two prongs of the qualified immunity analysis should be addressed first.   *See
Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

A qualified immunity defense can be asserted at various stages of the
litigation, including the summary judgment stage.   *See English v. Dyke*, 23 F.3d
1086, 1089 (6th Cir. 1994).   The qualified immunity inquiry at the summary
judgment stage is distinguished from the Rule 12(b)(6) stage in that generalized
notice pleading no longer suffices, and the broader summary judgment record
provides the framework within which the actions of each individual defendant must
be evaluated.   At the summary judgment stage, "the plaintiff must, at a minimum,
offer sufficient evidence to create a 'genuine issue of fact,' that is, 'evidence on which

a jury could reasonably find for the plaintiff.' "   *Thompson v. City of Lebanon, Tenn.*, 831 F.3d 366, 370 (6th Cir. 2016); *see Gardner v. Evans*, 811 F.3d 844, 846 (6th Cir. 2016).

In *Brosseau v. Haugen*, the Supreme Court examined the underlying purpose of the requirement that the law be clearly established:

> Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, misapprehends the law governing the circumstances she confronted. . . .   Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.   If the law at the time did not clearly establish that the officer's conduct would violate the Constitution, the officer should not be subject to liability or, indeed, even the burdens of litigation.

543 U.S. 194, 198 (2004); *see also Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) ("The dispositive question is whether the violative nature of the particular conduct is clearly established.") (citation and quotation omitted); *City & County of San Francisco, Calif. v. Sheehan*, 135 S. Ct. 1765, 1774 (2015) ("An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate.") (citations and quotations omitted). Qualified immunity is an immunity from suit rather than a mere defense to liability. *Plumhoff v. Rickard*, 134 S. Ct. 2012, 2019 (2014).

The Supreme Court has repeatedly held that the second prong of the qualified immunity analysis " 'must be undertaken in light of the specific context of the case,

not as a broad general proposition.' "  *Brosseau v. Haugen*, 543 U.S. at 198 (quoting *Saucier v. Katz*, 533 U.S. at 201); *see White v. Pauly*, 137 S. Ct. 548, 552 (2017). Moreover, courts are "not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced."  *Plumhoff v. Rickard*, 134 S. Ct. at 2023 (citations and quotations omitted); *see Kisela v Hughes*, 138 S. Ct. 1148, 1152 (2018).

"The burden of convincing a court that the law was clearly established 'rests squarely with the plaintiff.' "  *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)); *see Stevens-Rucker v. City of Columbus, Ohio*, Nos. 17-3384/3475, __ F. App'x __, 2018 WL 3359554, at *3 (6th Cir. July 10, 2018) ("Plaintiff bears the burden of showing that defendants are not entitled to qualified immunity.").   The burden applies to each claim.  *See Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015).

## **Preliminary Matters**

Plaintiff's complaint is not verified under penalty of perjury.   It cannot be considered as an affidavit in opposition to defendants' summary judgment motions. *See El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008).   Plaintiff merely states that "the facts attributed to him pertaining to the claim are true to his own personal knowledge." (ECF No. 1, PageID.10).   Plaintiff's brief in response to the Corizon defendants' motion for summary judgment ends with a purported "verification" that

the claims presented in his complaint and briefs are "true to the best of his knowledge and belief." (ECF No. 56, PageID.559). His brief in response to the MDOC defendants' motion for summary judgment and his supplemental brief end with "verifications" that the statements are "true to the best of his personal knowledge and information and belief." (ECF No. 62, PageID.638; ECF No. 64, PageID.662). "[S]tatements made on belief or on information and belief, cannot be utilized on a summary-judgment motion." *Ondo v. City of Cleveland*, 795 F.3d 597, 605 (6th Cir. 2015).

"Verified" arguments and legal conclusions are not evidence. Legal conclusions, whether asserted in an affidavit or verified complaint, do not suffice to create a genuine issue of material fact for trial. *See Medison Am. Inc. v. Preferred Med. Sys., LLC*, 357 F. App'x 656, 662 (6th Cir. 2009); *Simmons v. Rogers*, No. 1:14-cv-1242, 2017 WL 1179376, at *1 (W.D. Mich. Mar. 30, 2017). "Arguments in parties' briefs are not evidence." *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006).

## Proposed Findings of Fact

The following facts are beyond genuine issue. Plaintiff was an inmate held in the custody of the Michigan Department of Corrections at all times relevant to his claims.

### A. Medical Care

On February 5, 2014, plaintiff advised Registered Nurse Rhonda Rider that he

was frustrated by intermittent movements of his lower extremities.   Plaintiff was in no apparent distress.   He was alert and oriented.   He had no sensory or motor deficits and his extremities appeared normal.   Although plaintiff reported involuntary movements of his lower extremities, Nurse Rider was not convinced that plaintiff's movements were involuntary.   Nurse Rider noted that plaintiff had a scheduled appointment with a doctor in a few days and she wanted the benefit of his expertise in addressing plaintiff's condition.   (ECF No. 1-1, PageID.17-19).

On February 10, 2014, Victor Dominguez-Bem, M.D., submitted request for approval of a neurology consultation.   Keith Papendick, M.D. and Erin Orlebeke, M.D., denied the initial request because plaintiff's involuntary movements were not described with sufficient detail to make a medical determination of necessity.   (ECF No. 1-1, PageID.20-21; ECF No. 45-2, PageID.386-89; Orlebeke Aff. ¶¶ 1-5, ECF No. 45-4, PageID.453-54).

On February 19, 2014, plaintiff appeared at the prison's health care clinic complaining that he was experiencing involuntary movements of his arms and legs. The nurse contacted Dr. Dominguez-Bem for orders and he instructed that plaintiff should be transported outside the prison to a hospital emergency room.   (ECF No. 45-2, PageID.390-94).   Plaintiff received an emergency room evaluation and returned to prison later that day.   The hospital CT scan of plaintiff's brain returned normal results.   The emergency room physician had recommended Benadryl and a neurological referral.   On February 19, 2014, Dr. Dominguez-Bem conducted a

follow-up examination.   Plaintiff was alert and oriented with no motor or sensory deficits.   Dr. Dominguez-Bem prescribed Benadryl.   (*Id.* at PageID.398-99).   On February 27, 2014, Dr. Dominguez-Bem submitted a second request for a neurology referral.   It was approved on the day it was received because plaintiff had been diagnosed with dystonia during his emergency room visit.   (ECF No. 1-1, PageID.24-25; ECF No. 45-2, PageID.400-03; Orlebeke Aff. ¶¶ 6-7, ECF No. 45-4, PageID.454; Papendick Aff. ¶¶ 6-10, ECF No. 50, PageID.468-69).

On March 10, 2014, Dr. Dominguez-Bem requested an electroencephalogram (EEG).   Doctors Orlebeke and Papendick approved the request.   On March 11, 2014, Dr. Dominguez-Bem requested approval for electromyography (EMG) and videonystagmography (VENG) tests.[4]   Later that day, Doctors Orlebeke and Papendick approved the EMG but deferred the request for a VENG test.   VENG is a test for disequilibrium, not abnormal limb movement.   Plaintiff did not meet the criteria for the test.   (ECF No. 1-1, PageID.32-43; ECF No. 45-2, PageID.408-19; Orlebeke Aff. ¶¶ 10-12, ECF No. 45-4, PageID.454-55; Papendick Aff. ¶¶ 11-15, ECF No. 50, PageID.469).

On March 24, 2014, plaintiff was evaluated by a neurologist, Dennis Dafnis,

---

[4] On March 5, 2014, Dr. Dominguez-Bem submitted one request for all three tests. The response reminded him that he was required to submit a separate request for each diagnostic test.   (ECF No. 1-1, PageID.28-31; ECF No. 45-2, PageID.404-07; Orlebeke Aff. ¶¶ 8-9, ECF No. 45-4, PageID.454; Papendick Aff. ¶¶ 11-12, ECF No. 50, PageID.469).

M.D.   Dr. Defanis noted that plaintiff complained of "dyskinesia or tremor, gait abnormality and spasms/spasticity but denied alteration of consciousness, aphasia, ataxia, dizziness, headache, hearing loss, memory loss, mental status change, pain, back pain, generalized pain, neck pain, paresis, paresthesia, seizure, speech difficulties, syncope, tinnitus, vertigo, vision change and weakness."   (ECF No. 1-1, PageID.44-45).   Plaintiff appeared well nourished, well developed, and was in no acute distress.   Dr. Dafnis described plaintiff's EMG/NCS test results as abnormal but stated the tests revealed no acute findings.   Plaintiff's EEG was abnormal "due to evidence of possible epileptogenic focus in the left frontal temporal area extending to the right side.   This [was] consistent with seizure disorder of focal cortical origin with secondary generalization."   (*Id.* at PageID.46).   Dr. Dafnis offered a diagnosis of abnormal involuntary movement, myoclonus, and epilepsy.   He suggested a prescription for Requip and to increase plaintiff's Depakote dosage.   (*Id.* at PageID.45).

On June 4, 2015, plaintiff submitted a health care request complaining that the medication prescribed by Dr. Dominguez did not work.   Registered Nurse Randy Lindstrom advised plaintiff to discuss his medication concerns with a medical care provider at an upcoming appointment.   (ECF No. 1-2, PageID.68; Plf. Dep. at 15, ECF No. 53-3, PageID.501).

On August 22, 2015, Dr. Troy Davis submitted a request for a neurology consultation.   Dr. Papendick denied the request because it did not appear to be

medically necessary.   On September 4, 2015, a physician's assistant submitted a request for an EEG.   On September 10, 2015, Dr. Papendick approved the request. (ECF No. 1-1, PageID.47-52; ECF No. 45-2, PageID.422-27; Papendick Aff. ¶¶ 16-18, ECF No. 50, PageID.469-70).   On September 23, 2015, plaintiff's EEG was normal. (ECF No. 1-1, PageID.53).

On November 14, 2015, Dr. Davis submitted a request for an EMG of plaintiff's lower extremities.   On November 15, 2016, Dr. Papendick denied the request. There was no medical necessity for an EMG because plaintiff already had one the requesting physician had not reported radicular symptoms that would warrant another EMG.   (ECF No. 45-2, PageID.428-31; Papendick Aff. ¶¶ 19-23, ECF No. 50, PageID.470).

On December 14, 2015, plaintiff received treatment at Coldwater Health Center's emergency room with a diagnosis of pseudoseizure and/or suspected malingering.   (Johnston Aff. ¶ 5, ECF No. 45-5, PageID.457).

Oliver Johnston, M.D., first evaluated plaintiff in a chronic care visit on December 16, 2015.   Dr. Johnston noted that plaintiff was not compliant with his medications and the medications had no side effects.   He reviewed the test results from plaintiff's recent emergency room visit.   Plaintiff's lab results were normal except for prolactin.   Plaintiff was not in any acute distress.   His speech was normal.   Dr. Johnston scheduled chronic care visits once a month for epilepsy and renewed his prescriptions for Naproxen and Levetiracetam.   (ECF No. 45-2,

PageID.432-33; Johnston Aff. ¶¶ 1-6, ECF No. 45-5, PageID.456-57).

On January 14, 2016, Dr. Johnston saw plaintiff on a chronic care visit related to his seizures.   Dr. Johnston noted good seizure control and ordered a follow-up visit in six months.   (ECF No. 45-2, PageID.435-36; Johnston Aff. ¶ 7, ECF No. 45-5, PageID.457).

On January 20, 2016, plaintiff submitted a health care request.   Registered Nurse Lindstrom provided a response advising plaintiff to discuss his concerns regarding his medications with his medical care provider at his next appointment. (ECF No. 1-2, PageID.71-74; Plf. Dep. at 15, ECF No. 53-3, PageID.501).

On January 25, 2016, plaintiff filed a grievance complaining of the "cavalier approach" some medical professionals had taken in the treatment of his medical condition.   (ECF No. 1-2, PageID.75-79).   In an addendum to the grievance plaintiff complained that on some unspecified occasion Registered Nurse Hope Peek told a corrections officer that plaintiff was faking when he was having a seizure and that she told plaintiff to hold still while she was trying to take his blood pressure.   (*Id.* at PageID.78; Plf. Dep. at 15-16, ECF No. 53-3, PageID.501-02).   On February 8, 2016, Registered Nurse Rider signed the Step I grievance response as the respondent. Two days later, Registered Nurse Betsy Roberts-Spreeman signed the Step I response as the reviewer.   (ECF No. 1-2, PageID.80).

On February 11, 2016, Dr. Johnston saw plaintiff for an unscheduled provider visit.   During this visit Dr. Johnston discussed plaintiff's non-formulary request for

Requip.    Dr. Johnston explained to plaintiff that Requip has significant side effects which could cause potential harm.    Plaintiff was adamant that he must have this medication.    Dr. Johnston submitted a non-formulary request for the medication. (ECF No. 45-2, PageID.437-39; Johnston Aff. ¶¶ 8-11, ECF No. 45-5, PageID.457).

On September 1, 2016, plaintiff filed a grievance complaining that he should not have been transferred from Lakeland Correctional Facility's special needs unit (A-Unit) to the prison's general population.    (ECF No. 1-2, Page ID.92; Plf. Dep. at 18-19, ECF No. 53-3, PageID.503-04).    Registered Nurses Rider and Roberts Spreeman signed the Step I grievance response.    (ECF No. 1-2, PageID.92-93).

It is not within the scope of practice for a health unit manager or registered nurse to diagnose conditions or prescribe medications.    Medication changes can only be made by medical care providers.    Further, A-Unit is the medical unit at the Lakeland Correctional Facility (LCF).    It is for geriatric prisoners and prisoners with special needs.    Plaintiff was moved from A-Unit because it was not medically necessary for him to be housed in that unit. Medical clearance from a treating physician is necessary to have an inmate moved from A-Unit to the prison's general population.    (Rider Aff. ¶¶ 3-4, ECF No. 53-5, PageID.509; Roberts-Spreeman Aff. ¶¶ 3-4, ECF No. 53-6, PageID.512; Pigg Aff. ¶¶ 5-6, ECF No. 53-7, PageID.516; Lindstrom Aff. ¶¶ 1-4, ECF No. 57-1, PageID.604-05).

On November 14, 2016, plaintiff was examined by Dr. Sudhir.    Plaintiff complained of pain when standing or walking and progressive tingling in his lower

extremities.   Plaintiff's balance and gait were intact.   He had no motor weakness. Dr. Sudhir requested approval for an EMG of plaintiff's lower extremities and he scheduled a follow-up appointment for November 28, 2016.   Dr. Papendick denied this request because it did not appear to be medically necessary at that time.   (ECF No. 1-2, PageID.101-05; ECF No. 45-2, PageID.440-43).

The medical care professional defendants provided care in a manner consistent with their professional medical judgment.   (Johnston Aff. ¶ 12, ECF No. 45-5, PageID.458; Orlebeke Aff. ¶ 14, ECF No. 45-4, PageID.455; Papendick Aff. ¶ 25, ECF No. 50, PageID.470; Peek Aff. ¶¶ 1-6, ECF No. 53-4, PageID.506-07; Rider Aff. ¶¶ 1-6, ECF No. 53-5, PageID.509-10; Roberts-Spreeman Aff. ¶¶ 1-6, ECF No. 53-6, PageID.512-13; Lindstrom Aff. ¶¶ 1-5, ECF No. 57-1, PageID.604-05).

B. <u>Grievances against Corizon Defendants</u>

Plaintiff filed a number of grievances and pursued some of them through a Step III decision before he filed this lawsuit. (ECF No. 41-1, PageID.313-45).   One grievance is related to plaintiff's claims against a Corizon defendant and therefore warrants further discussion.

On January 26, 2016, LCF's grievance coordinator received a grievance from plaintiff and assigned it Grievance No. LCF-16-01-0063-12F.   In this grievance, plaintiff claimed that Dr. Johnston denied him medication for his seizure disorder. (ECF No. 41-1, PageID.332, 343-45).   Plaintiff's grievance was denied at Step I (*Id.* at PageID.333) and his grievance appeals were denied at Steps II and III (*Id.* at

PageID.329-31).

## **Discussion**

A. <u>John and Jane Doe Defendants</u>

All plaintiff's claims against John and Jane Doe defendants should be dismissed for failure to achieve service of process. The unknown parties were not served within the time provided by Rule 4(m) of the Federal Rules of Civil Procedure. Dismissal of all plaintiff's claims against the unknown parties without prejudice is appropriate. This report and recommendation serves as plaintiff's notice of impending dismissal. *See Bridgeport Music, Inc. v. Rhyme Syndicate Music*, 376 F.3d 615, 623 (6th Cir. 2004); *accord Reynosa v. Schultz*, 282 F. App'x 386, 393-94 (6th Cir. 2008).

B. <u>Eleventh Amendment Immunity</u>

Plaintiff's claims for damages against the MDOC defendants in their official capacities are barred by Eleventh Amendment immunity.[5] The Eleventh Amendment bars suit in federal court against a state and its departments or agencies unless the state has waived its sovereign immunity or unequivocally consented to be sued. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Michigan has not consented to civil rights suits in federal court. *See Johnson v. Dellatifia*, 357 F.3d 539, 545 (6th Cir. 2004). A suit against a state officer in his or

---

[5] Plaintiff does not dispute that the MDOC defendants are entitled to Eleventh Amendment immunity on these claims. (ECF No. 62, PageID.636).

her official capacity is simply another way of pleading an action against the state. *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989); *VIBO Corp. v. Conway*, 669 F.3d 675, 691 (6th Cir. 2012). Furthermore, states and their departments are not "persons" within the meaning of 42 U.S.C. § 1983. *See Will v. Michigan Dep't of State Police*, 491 U.S. at 71.

The MDOC defendants are entitled to dismissal with prejudice of plaintiff's claims for monetary damages against them in their official capacities.

C. Eighth Amendment

In *Estelle v. Gamble*, 429 U.S. 97 (1976), the Supreme Court held that deliberate indifference to a prisoner's serious medical needs, manifested by prison staff's intentional interference with treatment or intentional denial or delay of access to medical care, amounts to the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104-05. In judging the sufficiency of "deliberate indifference" claims, the Court must view the surrounding circumstances, including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention. *Westlake v. Lucas*, 537 F.2d 857, 860 n.4 (6th Cir. 1976).

In *Wilson v. Seiter*, 501 U.S. 294 (1991), the Supreme Court clarified the deliberate indifference standard: a prisoner claiming cruel and unusual punishment must establish both that the deprivation was sufficiently serious to rise

to constitutional levels (an objective component) and that the state official acted with a sufficiently culpable state of mind (a subjective component).   501 U.S. at 298. "The plaintiff must show both that the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and that the official acted with a culpable enough state of mind, rising above gross negligence."   *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018).   No reasonable trier of fact could find in plaintiff's favor on either component of Eighth Amendment claims against defendants.

"The objective component requires a plaintiff to prove that the alleged deprivation of medical care was serious enough to violate the Eighth Amendment." *Id.*   Plaintiff claims that the treatment he received was inadequate or unreasonably delayed.   Thus, he was required to "present enough evidence for a factfinder to evaluate the adequacy of the treatment provided and the severity of the harm caused by the allegedly inadequate treatment" and " 'medical proof that the provided treatment was not an adequate medical treatment of [the inmate's] condition or pain.' "   *Id.* (quoting *Santiago v. Ringle*, 734 F.3d 585, 591 (6th Cir. 2013)).   "The plaintiff also must place verifying medical evidence in the record to establish the detrimental effect of the inadequate treatment."   *Rhinehart v. Scutt*, 894 F.3d at 738 (citation and quotation omitted).   Plaintiff did not present medical evidence sufficient for a reasonable trier of fact to find in his favor on the objective component of his Eighth Amendment claims against defendants.

The Supreme Court held in *Farmer v. Brennan*, 511 U.S. 825 (1994), that deliberate indifference is tantamount to a finding of criminal recklessness.   An official "cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety[.]"   *Id.* at 837.   "A doctor is not liable under the Eighth Amendment if he or she provides reasonable treatment, even if the outcome of the treatment is insufficient or even harmful."   *Rhinehart v. Scutt*, 894 F.3d at 738.   The judgments of medical professionals are entitled to deference.   *Id.* The subjective component presents "a high bar that a plaintiff must clear to prove an Eighth Amendment medical needs claim:   The doctor must have *consciously* exposed the patient to an *excessive risk* of *serious* harm."   *Id.* at 738-39 (citation and quotation omitted).

The Sixth Circuit's decision in *Miller v. Calhoun County*, 408 F.3d 803 (6th Cir. 2005), summarized the subjective component's requirements:

> Deliberate indifference requires a degree of culpability greater than mere negligence, but less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.   The prison official's state of mind must evince deliberateness tantamount to intent to punish.   Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference.   Thus, an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Miller*, 408 F.3d at 813 (citations and quotations omitted).

-21-

"An inmate's disagreement with the testing and treatment he has received does not rise to the level of an Eighth Amendment violation.   Nor does a desire for additional or different treatment suffice to support an Eighth Amendment claim." *Rhinehart v. Scutt*, 894 F.3d at 740 (citations and quotations omitted).   "A disagreement with a course of medical treatment does not rise to the level of a federal constitutional claim under the Eighth Amendment."   *Id.* at 744.   Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second-guess medical judgments and constitutionalize claims that sound in state tort law.   *Id.* at 740, 753.

Plaintiff has not presented evidence sufficient to support the subjective component of an Eighth Amendment claim for deliberate indifference to serious medical needs.   The record shows that defendants treated plaintiff and displayed no deliberate indifference.   The claims that defendant "should have" provided him with "different" medical care are, at best, state-law malpractice claims.

D. <u>Corizon</u>

A private corporation cannot be held liable under Section 1983 on the basis of *respondeat superior* or vicarious liability.   *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996).   Rather, the plaintiff must establish a policy or custom that caused the constitutional violation.   *Ford v. County of Grand Traverse*, 535 F.3d 483, 495 (6th Cir. 2008).   Plaintiff has not presented evidence on which a reasonable trier

-22-

of fact could find that any Corizon policy or custom violated his Eighth Amendment rights.

    E. <u>First Amendment</u>

    Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (*en banc*). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Plaintiff has the burden of proof on all three elements. *See Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2013).

    Registered Nurse Rider seeks summary judgment based on the second and third elements of a retaliation claim. (ECF No. 53, PageID.490-91). The second element of a retaliation claim is an adverse action against plaintiff that would deter a person of ordinary firmness from engaging in the protected conduct. "[R]outine inconveniences of prison life [ ] do not constitute adverse action." *Reynolds-Bey v. Harris*, 428 F. App'x 493, 503 (6th Cir. 2011). Here, it is not necessary to resolve whether being moved from LCF's special needs unit to the general population was an adverse action because Registered Nurse Rider is clearly entitled to judgment in her third favor based on the third element.

    Plaintiff has not presented evidence on which a reasonable trier of fact could

find causation.    The third element of a retaliation claim addresses whether a defendant's subjective motivation for taking the adverse action was at least in part to retaliate against the prisoner for engaging in protected conduct.    *Thaddeus-X*, 175 F.3d at 399.    If the prisoner can show that the defendant's adverse action was at least partially motivated by the prisoner's protected conduct, then the burden shifts to the defendant to show that he or she would have taken the same action even absent such protected conduct.    *Id.*    Plaintiff has failed to present evidence that it was Registered Nurse Rider's decision or within her power to have plaintiff moved from the special needs unit to the prison's general population.    He also failed to present evidence that the decision to move him was motivated by his protected conduct.    I find that Registered Nurse Rider is entitled to summary judgment on plaintiff's retaliation claim.

F.  Qualified Immunity

The MDOC defendants are also entitled to summary judgment on plaintiff's claims for damages against them in their individual capacities on the basis of qualified immunity.    (ECF No. 53, PageID.493-94).    Plaintiff has not presented evidence sufficient to satisfy the first prong of the qualified immunity analysis on those claims for the reasons previously stated herein.

The second prong of the qualified immunity analysis must be undertaken in light of the specific context of the case, not as a broad general proposition.    *See Brosseau v. Haugen*, 543 U.S. at 198; *see also Kisela v. Hughes*, 138 S. Ct. at 1152.

It was plaintiff's burden to convince the Court that the law was clearly established when each MDOC defendant acted. *See Johnson v. Moseley*, 790 F.3d at 653. Plaintiff's quote of from a headnote regarding the Supreme Court's *Saucier* decision (ECF No. 62, PageID.637) does not approach satisfying his burden.

G. <u>Exhaustion</u>

Alternatively, the Corizon defendants seek partial summary judgment based on the affirmative defense that plaintiff did not properly exhaust his administrative remedies against them as required by 42 U.S.C. § 1997e(a).   (ECF No. 41, PageID.308-11).

A grievance must provide "fair notice of the alleged mistreatment or misconduct that forms the basis of the constitutionalor statutory claim made against a defendant in a prisoner complaint." *Bell v. Konteh*, 450 F.3d 651, 654 (6th Cir. 2006); *see also Peoples v. Bauman*, No. 16-2096, 2017 WL 7050280, at *4 (6th Cir. Sept. 5, 2017).   Plaintiff argues that he exhausted his available administrative remedies through Grievance No. LCF-2016-0063-12F.   However, his grievance specifies January 21, 2016, as the date of the incident being grieved.   (ECF No. 1-2, PageID.75).   Further, he fails to identify any specific allegations in the body of this grievance describing improper conduct by Dr. Papendick, Dr. Orlebeke, or Corizon. (ECF No. 55 at PageID.521-25).   Plaintiff argues that his grievance should be deemed adequate to exhaust all his claims against the Corizon defendants because he included an allusion to "all other currently unknown MDOC and Corizon, Inc.

doctors/health care professionals who have contributed to what has now become a cavalier approach to the treatment of my serious medical condition (chronic seizures), evidencing deliberate indifference on the part of SOME, but not all, of my medical providers." (*Id.* at PageID.521) (quoting ECF No. 1-2, PageID.75). The Corizon defendants' alternative motion for partial summary judgment should be granted because plaintiff's grievance did not provide "fair notice."

### Recommended Disposition

For the reasons set forth herein, I recommend that all plaintiff's claims against John and Jane Doe defendants be dismissed without prejudice under Rule 4(m) of the Federal Rules of Civil Procedure for failure to achieve service.   I recommend that all plaintiff's claims for damages against the MDOC defendants in their official capacities be dismissed with prejudice because they are barred by Eleventh Amendment immunity.   I recommend that defendants' motions for summary judgment on the merits (45, 52) be granted and that judgment be entered in defendants' favor on all plaintiff's claims.   I recommend that the Corizon defendants' alternative motion for partial summary judgment based affirmative defense of failure to exhaust administrative remedies, as required by 42 U.S.C. § 1997e(a) (ECF No. 41) be granted.

Dated: August 29, 2018                          /s/   Phillip J. Green
                                                PHILLIP J. GREEN
                                                United States Magistrate Judge

## <u>NOTICE TO PARTIES</u>

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.   28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).   All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).   Failure to file timely and specific objections may constitute a waiver of any further right of appeal.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).   General objections do not suffice. *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).